**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARACELIA DE JESUS MEDINA, | ) | CASE NO. 1:22-CV-00762-JPC |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |
| | ) | |

## I.     INTRODUCTION

Plaintiff Aracelia De Jesus Medina ("Ms. De Jesus Medina") seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (ECF Doc. 1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to a magistrate judge for preparation of a Report and Recommendation, and it was subsequently reassigned to me pursuant to General Order No. 2022-14. For the reasons set for the below, I RECOMMEND that the Court AFFIRM the final decision of the Commissioner.

## II.     PROCEDURAL HISTORY

On October 24, 2019, Ms. De Jesus Medina filed applications for DIB and SSI. (Tr. 21, 215-30).[1] Her applications were denied initially on March 13, 2020, and upon reconsideration on August 3, 2020, and Ms. De Jesus Medina requested an administrative hearing. (Tr. 21, 109-117,

---

[1] The transcript referred to in this Report and Recommendation is located at ECF Doc. 6 on CM/ECF.

128-35, 136-37). On February 10, 2021, an ALJ held a hearing, during which Ms. De Jesus Medina, represented by counsel and with the assistance of a Spanish interpreter, and an impartial vocational expert testified. (Tr. 37-52). On April 8, 2021, the ALJ issued a written decision finding Ms. De Jesus Medina was not disabled. (Tr. 21-36). The ALJ's decision became final on March 21, 2022, when the Appeals Council declined further review. (Tr. 1-5). Ms. De Jesus Medina asserts the following assignments of error in her merits brief:

1.  The appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers. As such, the decision in this case by an ALJ who derived his authority from Andrew Saul was constitutionally defective.

2.  The ALJ erred when he failed to include in his RFC the limitations as set forth by the consultative examiner, Dr. Rivera.

3.  The ALJ committed harmful error when his RFC for work at the light level of exertion failed to include limitations related to De Jesus Medina's pain.

(ECF Doc. 11, PageID#676). On October 7, 2022, Ms. De Jesus Medina notified the Commissioner via e-mail that she was withdrawing her first assignment of error, *i.e.*, the separation of powers argument. (ECF Doc. 11, PageID#711 n.1). Because Ms. De Jesus Medina has withdrawn her first assignment of error, the only assignments of error that will be addressed in this Report and Recommendation are: (1) whether the ALJ erred when he failed to include in his RFC the limitations set forth by Dr. Rivera; and (2) whether the ALJ erred when his RFC for work at the light level of exertion failed to include limitations related to Ms. De Jesus Medina's pain.

## III.    BACKGROUND INFORMATION

### A.  *Personal, Educational, and Vocational Experience*

Ms. De Jesus Medina was born in 1967, and she was 49 years old on the alleged onset date. (Tr. 29). At the time of the hearing, she lived with her husband (with whom she was legally separated in 2019) in Florida. (Tr. 42). She is a high school graduate and obtained an associate's

degree in secretarial office work in Puerto Rico. (Tr. 498). She last worked as a home health aide, but she stopped working in 2019 due to a "relapse" in her back condition. (*See* Tr. 42-43).

**B.** *Relevant Hearing Testimony*

**1.** <u>**Ms. De Jesus Medina's Testimony**</u>

Ms. De Jesus Medina testified that she stopped working due to a "relapse" in her back condition in 2019. (*See* Tr. 43-44). She characterized this "relapse" as having no movement with her back. (*See id.*). Due to this relapse, Ms. De Jesus Medina stated that she was paralyzed and had to undergo six months of therapy. (Tr. 43).  She testified that one of the main issues since her relapse has been pain in her hips and left leg. (*Id.*). She stated that she is always in pain and limps frequently. (*See id.*). Since the relapse, she traveled from Cleveland to Florida and had to be in bed for four days. (*Id.*). Ms. De Jesus Medina stated that she has not had a relapse since then. (*Id.*).

Ms. De Jesus Medina stated that she previously worked part-time jobs, and she was constantly missing work. (Tr. 44). She testified that she would go from work to the hospital because the pain was so great. (*See id.*).

Ms. De Jesus Medina testified that she also experienced issues with the discs in her lower back (L5) and her hip. (Tr. 45). She stated that she had no issues with her hip until 2019, when she began to feel pain in her hip that sometimes prevented her from sleeping. (*Id.*). She also testified that at times her left hip would get "stuck" when walking. (*Id.*). She experienced pain in her right hip, but the pain was mainly or constantly in her left hip. (*Id.*).

Ms. De Jesus Medina further testified that she has arthritis in her elbows, wrist, and spine. (Tr. 45). She stated that she does not have difficulty using her arms to reach out in front of her, but she does have difficulty handing small objects with her left hand due to the arthritis in her wrist.

3

(Tr. 46). For example, she stated that if she grabbed her laptop with her left hand, she has to let it go or immediately grab the laptop with her right hand so it does not fall. (*See id.*).

Ms. De Jesus Medina testified that her depression affected her sleep. (*See* Tr. 47). Since her relapse in 2019, she has experienced anxiety, frustration, and stress from being unable to do anything for a month and being dependent on her husband for care. (*See id.*). She is worried that she may have another relapse that is much worse than the one in 2019. (*Id.*).

### 2. <u>Vocational Expert's Testimony</u>

The vocational expert ("VE") testified that Ms. De Jesus Medina's relevant work was as a home health aide (*Dictionary of Occupational Titles* ("DOT") #354.377-014). (Tr. 49). The ALJ asked the VE to consider a person with Ms. De Jesus Medina's age and education who could only speak Spanish and was limited to performing work at light level of exertion. (Tr. 50). The VE opined that the individual could not perform her past relevant work, but she could perform other jobs at the light exertional level such as a housekeeping cleaner (DOT #209.587-034), merchandise marker (DOT #209.587-034), and routing clerk (DOT #222.687-022).

As a second hypothetical, the ALJ asked the VE whether a person with the same restrictions as the first hypothetical and the additional limitation of sedentary work would be able to perform other work. (Tr. 50). The VE opined that this individual would not be able to perform her past work. (*Id.*). The ALJ also asked whether restricting this individual to lifting and carrying no more than 10 pounds occasionally, or standing or walking no more than two hours in an eight-hour work day would eliminate all light duty positions. (Tr. 51). The VE affirmed that this restriction would eliminate all light duty positions for this individual. (*Id.*).

### C. *Relevant Medical/Non-Medical Opinion Evidence*

### 1. <u>Douglas Chang, M.D.</u>

4

Dr. Chang, a state agency internist, found that Ms. De Jesus Medina is able to occasionally lift and carry up to 50 pounds, frequently lift and carry up to 25 pounds, stand and walk for 6 hours per day, sit about 6 hours per day, frequently stoop, and has no limitations in other postural activities. (Tr. 63).

### 2.  Evelyn Rivera, M.D.

In March 2020, Dr. Rivera, a consultative psychologist, examined Ms. De Jesus Medina. (Tr. 497-500). Dr. Rivera observed that Ms. De Jesus Medina had appropriate appearance, logical and coherent thought content, depressed mood, average intelligence, and intact insight and judgment. (Tr. 498-99). Dr. River further opined that Ms. De Jesus Medina's depressed mood, low energy, and anxiety symptoms will "affect her ability to" respond to coworkers and supervisors, perform tasks, respond to appropriate work pressures, and carry out instructions. (Tr. 500).

### 3.  Courtney Zeune, Psy.D.

Dr. Zeune, a state agency psychologist, reviewed the medical record in March 2020 and found that Ms. De Jesus Medina can understand, remember, and carry out short cycle work; can maintain concentration, persistence, and pace on short cycle work; can interact superficially with supervisors, coworkers, and the general public; and that her work should be routine with infrequent changes explained in advance. (Tr. 64-65).

### 4.  Robyn Murry-Hoffman, Psy.D.

In August 2020, Dr. Murry-Hoffman reviewed the medical record upon reconsideration. She found that Ms. De Jesus Medina can understand, remember, and carry out short cycle work; maintain concentration, persistence, and pace on short cycle work that does not require extended periods of sustained concentration or require claimant to meet strict production demands; interact

superficially with supervisors, coworkers, and the public on an intermittent basis; and that her work should be routine with infrequent changes explained in advance. (Tr. 106-07).

### 5. Mehr Siddiqui, M.D.

Dr. Siddiqui reviewed the medical record on reconsideration in July 2020. (Tr. 106). He found that Ms. De Jesus Medina is able to occasionally lift and carry up to 20 pounds; frequently lift and carry up to 10 pounds; stand and walk about six hours per day; sit about six hours per day; and should avoid all exposure to hazards such as machinery and heights. (Tr. 105).

### D. *Relevant Medical Evidence*

### 1. Ms. De Jesus Medina's Physical Conditions

Treatment notes from June 2016 indicate that Ms. De Jesus Medina underwent a bunionectomy in the right foot but had no other complaints. (Tr. 357). In December 2017, she complained of abdominal pain but denied any back or neck pain. (Tr. 353). Progress notes from April 2018 noted tenderness and spasms in the spine but proper orientation, normal motor function, and no sensory deficits. (Tr. 345). On May 31, 2018, Ms. De Jesus Medina reported continued back pain that worsened with ambulation. (Tr. 343). Her pain medication helped, but she was only taking it at night because it made her drowsy. (*Id.*). In August 2018, she reported low back pain. (Tr. 342). She wanted to use lidocaine patches, which previously helped with pain. (*Id.*). She showed paraspinal muscle spasm. (*Id.*).

At her January 2, 2019 appointment, Ms. De Jesus Medina reported that her back pain had stabilized, she had no tenderness, and she had been doing home exercises. (Tr. 339-40). She presented for a pre-employment physical for a home health agency job. (Tr. 339). On June 24, 2019, she was assessed with acute left-sided low back pain with left-sided sciatica. (Tr. 333). On June 26, 2019, Ms. De Jesus Medina visited the emergency department at Metro Hospital for lower

6

middle back pain upon walking that morning. (Tr. 334). She had lower lumbar tenderness and muscle spasm. (Tr. 336). Her examination was otherwise normal. (Tr. 335-36). Four days later, her gait and motor function were reported as normal. (Tr. 459-60). She was given a muscle relaxer and pain medication. (Tr. 336).

On July 3, 2019, Ms. De Jesus Medina met with Dr. Alamo and complained of persistent low back pain with difficulty ambulating. (Tr. 330). She did not present with any psychiatric abnormalities. (*Id.*). She underwent an MRI of her lumbar spine on July 9, 2019, which revealed mild lumbar spondylosis without central canal or neural foramen stenosis. (Tr. 628). Dr. Emad Daoud examined Ms. De Jesus Medina on July 25, 2019 and observed that her symptoms were "mainly mechanical in the lower back secondary to the discogenic pain." (Tr. 460). Dr. Daoud also indicated Ms. De Jesus Medina has radicular component in distribution of the L5/S1 on the left. (*Id.*). In October 2019, Ms. De Jesus Medina received a lumbar epidural for her back pain. (Tr. 437). At a October 2019 physical therapy session, the physical therapist observed that Ms. De Jesus Medina was not working to her potential in physical therapy, and she would likely need reinforcement of hurt versus harm at her next session. (Tr. 434). At a later appointment, the physical therapist noted that Ms. De Jesus Medina showed poor compliance with her home exercise program. (Tr. 435, 440). In November 2019, Ms. De Jesus Medina ambulated independently without any assistive device, and she had recently been working out on a recumbent bike in physical therapy. (Tr. 428-29, 431). Progress notes from December 2019 indicate some limited range of motion in the lumbar spine with pain, and 4/5 strength in the lower extremities. (Tr. 433).

In February 2020, Ms. Jesus De Medina ambulated without any assistive devices and had full strength neurologically, but she had a positive straight leg raise and joint tenderness in the

7

spine. (Tr. 509). On March 5, 2020, she received another epidural injection. (Tr. 504-07). In June 2020, Ms. De Jesus Medina reported that her back pain improved with Meloxicam. (Tr. 542). At a June 27, 2020 visit to a hospital emergency room for chronic lower left back pain, Ms. De Jesus Medina indicated that she  needed injections and blocks for her back pain, but she never required surgery. (Tr. 538). She participated in the Cleveland Clinic Center for Comprehensive Pain Recovery to cope with her chronic pain. (Tr. 512-13, 517-18).

### 2.  Ms. De Jesus Medina's Mental Health Conditions

In December 2019, Ms. De Jesus Medina saw a counselor for the first time at the Center for Families and Children ("CFC"), at which time she was assessed with mild depression and anxiety related to separation from her husband, as well as worry regarding housing and basic needs. (Tr. 610). In January 2020, Ms. De Jesus Medina's depression improved, and she had only been treated by a social worker and counselor. (Tr. 549). Ms. De Jesus Medina's psychological examination was normal. (Tr. 550).

In February 2020, Ms. De Jesus Medina had open mood, appropriate affect, and proper orientation. (Tr. 509). In April 2020, she reported that she had not yet seen a psychiatrist, and that she was only taking Cymbalta (a medication) when she could not sleep. (Tr. 545). At a June 9, 2020 telemedicine visit, Ms. De Jesus Medina reported that she had been seeing a psychiatrist, her Cymbalta had been increased, and her depression had improved. (Tr. 542). While she appeared sad or depressed at appointments earlier in her treatment, she was well-kempt and showed continued improvement in her ability to handle situational stressors over her four months of counseling. (Tr. 582, 584, 586, 593, 595). In August 24, 2020, counseling services were discontinued due to CFC no longer providing Spanish language services. (Tr. 611).

### IV.   THE ALJ'S DECISION

In his April 8, 2021 decision, the ALJ made the following findings:[2]

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.

2.  The claimant has not engaged in substantial gainful activity since March 16, 2016, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: lumbar spine disorder; generalized anxiety disorder; depressive disorder; and post-traumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is able to never climb ladders, ropes, or scaffolds; and able to frequently stoop and crawl. She should avoid all exposure to unprotected heights and heavy machinery. She is able to perform simple tasks and follow simple instructions. She is able to make simple work-related decisions that do not require arbitration, negotiation, or supervisory authority. She can occasionally interact with coworkers and the general public, and frequently interact with supervisors. She is able to handle, few, if any, workplace changes.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born [in 1967], and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant's age category changed on March 15, 2017, when she turned 50 years old, classifying her as approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[2] The ALJ's findings are summarized.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 16, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 23-30).

## V.    LAW AND ANALYSIS

### A.   *Standard of Review*

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip* at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal

standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

**B.  *Standard for Disability***

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r*

11

*of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

### C.  *SSR 16-3p: Subjective Symptoms Assessment*

A claimant's subjective symptom complaints may support a disability finding only when objective medical evidence confirms the alleged severity of the symptoms. *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989). An ALJ is not required to accept a claimant's subjective symptom complaints, however, and may properly discount the claimant's testimony about a claimant's symptoms when it is inconsistent with objective medical and other evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003); SSR 16-3p, 2016 SSR LEXIS 4 *15 (Oct. 25, 2017) ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."). In evaluating a claimant's subjective symptom complaints, an ALJ may consider several factors, including the claimant's daily activities, the nature of the claimant's symptoms, the claimant's efforts to alleviate his symptoms, the type and efficacy of any treatment, and any other factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2016 SSR LEXIS 4 *15-19; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (stating that an ALJ properly considered a claimant's ability to perform day-to-day activities in determining whether his testimony regarding his pain was credible).

### D.  *Persuasiveness of Medical Opinions*

At Step Four of the sequential evaluation, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so,

the ALJ is required to "articulate how she considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At a minimum, the ALJ must explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). According to the regulation, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be. This is the consistency standard. And the regulation specifies that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be. This is the supportability standard. *See* 20 C.F.R. § 404.1520(c)(1)-(2).

### E. *Analysis*

Ms. De Jesus Medina raises two assignments of error: (1) the ALJ's RFC finding failed to include mental functional limitations discussed in Dr. Rivera's opinion; and (2) that the ALJ's RFC finding failed to include limitations related to Ms. De Jesus Medina's pain. For the reasons set forth below, both assignments of error are without merit.

### 1. <u>Whether the ALJ Erred in Failing to Include in his RFC the Limitations Set by Dr. Rivera</u>

Ms. De Jesus Medina contends that the ALJ erred because he failed to include the mental limitations proposed by Dr. Rivera in the RFC finding. (*See* ECF Doc. 11, PageID#686-90). Specifically, Ms. De Jesus Medina asserts that the ALJ merely cited two pages in support of his conclusion that Dr. Rivera's opinion was unpersuasive. (*Id.* at PageID#688). Next, Ms. De Jesus Medina contends that Dr. Rivera's opinions that Ms. Jesus Medina would have difficulty carrying out instructions, performing tasks, responding appropriately to supervisors, and responding appropriately to work pressures was supported because the record demonstrates that she had more

than minimal psychiatric treatment. (*See id.* at PageId#688). Finally, Ms. De Jesus Medina asserts that Dr. Rivera's opinion was also consistent with the state agency physician's statements that she would be limited to short cycle work without extended periods of sustained concentration or strict production quotas, as well as limited to interacting superficially with supervisors on an interment basis. (*See id.* at PageID#689). She contends that these findings were consistent with her hearing testimony that: (1) she had depression that affected her sleep; and (2) she has been scared and worried that she will have another relapse like the one she experienced in 2019. (*Id.*).

This assignment of error is not well-taken because the ALJ provided substantial evidence in support of his conclusion that Dr. Rivera's opinion was unpersuasive. First, the ALJ correctly determined that Dr. Rivera's opinion was vague. When describing Ms. De Jesus Medina's abilities and limitations, Dr. Rivera merely indicated for each category of functioning that Ms. De Jesus Medina's depressed mood, low energy, and anxiety symptoms "will affect her ability" to carry out instructions, perform tasks, respond appropriately to supervision/co-workers, and respond appropriately to work pressures. (*See* Tr. 500). Dr. Rivera's limited explanation leaves the reviewer with more questions than answers regarding the full extent of Ms. De Jesus Medina's mental limitations. Indeed, as the ALJ concluded, Dr. Rivera's opinion is vague because it "lacks the degree of functional impairment." (Tr. 27). 20 C.F.R. § 494.1513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have … limitations or restrictions in the following abilities…" Vagueness "is a proper basis on which to afford [a medical opinion] less weight." *Ackles v. Comm'r of Soc. Sec.*, 470 F.Supp.3d 744, 747 (N.D. Ohio July 3, 2020); *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 476 (6th Cir. 2008).

14

Ms. De Jesus Medina's contention that the ALJ merely relied on one page of reported daily activities (notably cited by Dr. Rivera) to discount Dr. Rivera's opinion is also not well-taken. The ALJ was required to consider all the evidence, which necessarily included the daily activities Ms. De Jesus Medina reported to Dr. Rivera. Specifically, Ms. De Jesus Medina reported the following activities: (1) helping her sister-in-law with cooking; (2) accompanying and assisting her sister-in-law with grocery shopping; (3) driving; and (4) maintaining personal hygiene. (Tr. 499). Ms. De Jesus Medina appears to assert that her daily activities were not reflective of her ability to respond to coworkers and supervisors, perform tasks, respond to appropriate work pressures, and carry out instructions. (*See generally* ECF Doc. 8, PageID#688-90). Yet Ms. De Jesus Medina has failed to cite to any evidence in the record showing that she was *not* able to sustain work without Dr. Rivera's opined limitations. And the testimony she cites in support of this argument (*i.e.,* that her depression affected her sleep, and she is worried that she will have another relapse) is unavailing. (*See* ECF Doc. 10, PageID#689, Tr. 47). Thus, Ms. De Jesus Medina failed to satisfy her burden of showing that she could not sustain work without Dr. Rivera's opined limitations. 20 C.F.R. § 416.912(a).

Moreover, as the ALJ noted, Ms. De Jesus Medina's minimal psychiatric treatment is inconsistent with Dr. Medina's opinion. Ms. De Jesus Medina asserts that her mental health treatment was not minimal because she attended 14 sessions. (*See* ECF Doc. 10, PageID#688). However, these sessions took place from December 2019 until April 2020—for only three to four months – with a counselor or social worker (*See generally* Tr. 575-610). Ms. De Jesus Medina also cites these sessions in support of her argument that Dr. Rivera's opinions were consistent with the record. (*See generally* ECF Doc. 10, PageID#688). Yet, as the ALJ noted elsewhere, Ms. De Jesus Medina has received treatment for allegedly disabling symptoms but the record "also reveals that

15

the treatment has been generally successful in controlling those symptoms." (Tr. 28). Indeed, the ALJ indicated that in January 2020, Ms. De Jesus Medina was noted to have improvement with her depression and had only been treated by a social worker and counselor. (Tr. 26, 549). And the counseling notes in February 2020 indicate observations that Ms. De Jesus Medina had an open mood, appropriate affect, and proper orientation. (Tr. 26, 509).

A review of the counseling records that Ms. De Jesus Medina relies on additionally supports the ALJ's conclusion regarding the record. For example, Ms. De Jesus Medina began treatment in December 2019 and was determined to have "mild" anxiety and depression. (Tr. 575). She reported that she left her job in June 2019 due to back problems, and due to the separation from her husband in September 2019 was concerned about housing and basic needs. (*Id.*). Significantly, at another session on April 1, 2020, Ms. De Jesus Medina reported improvement in mood due to increased stabilization of basic needs. (Tr. 586). Additionally, she moved into her daughter's home where she engaged in the daily activity of caring for her grandchildren. (*Id.*). At an April 14, 2020 counseling session, Ms. De Jesus Medina again reported an improvement in mood and an ability to contribute to work in the home and childcare. (Tr. 584). Furthermore, at her April 28, 2020 counseling session, she reported increased satisfaction with her living situation, with reduction in her depressed/anxious mood. (Tr. 582). Her T-scores for her anxiety and depression symptoms were noted as "minimal to cessation." (*Id.*).

Here, as demonstrated above, the ALJ articulated adequate reasoning for why he discounted Dr. Rivera's opinion. Dr. Rivera's opinion was vague because it did not set forth the degree of Ms. De Jesus Medina's functional limitations, and these limitations were inconsistent with her minimal mental health treatment and reported daily activities. The ALJ found persuasive the opinions of Drs. Zeune and Murry-Hoffman, the state agency specialists. Dr. Zeune opined

that Ms. De Jesus Medina is moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal work week without interruption, interact with the public, accept instructions and respond appropriately to criticism for supervisors, and get along with coworkers or peers without distracting them. (Tr. 64-65). Dr. Murry-Hoffman similarly opined that Ms. De Jesus Medina has moderate limitations in responding to changes in the work setting, getting along with coworkers and peers, carrying out detailed instructions, and maintaining attention and concentration for extended periods of time. (Tr. 95-96). The ALJ found these opinions persuasive and accommodated Ms. De Jesus Medina's mental health symptoms by crafting his RFC so that it limited her to simple tasks and instructions; simple work-related decisions; only occasional interactions with co-workers and the public; frequent interaction with supervisors; and few, if any, workplace changes. (Tr. 25). Because the ALJ provided adequate reasoning and substantial evidence in support of his conclusion, I recommend that the Court reject Ms. De Jesus Medina's first assignment of error.

## 2. Whether the ALJ's RFC Failed to Include Limitation Related to Ms. De Jesus Medina's Pain

Ms. De Jesus Medina's argues in her second assignment of error that the ALJ did not properly consider her subjective reports of pain. (*See* ECF Doc. 10, PageID#690-95). Ms. De Jesus Medina asserts that this subjective evidence supports the fact that she had pain issues that interfered with her ability to sustain activities, and that the pain limited her ability to stand or walk the requisite time to perform work at the light level of exertion. (*See id.* at PageID#692). She also contends that even if she could complete the daily activities cited by the ALJ, this does not constitute substantial evidence that her symptoms were not disabling. (*Id.* at PageID#693-94). Ms. De Jesus Medina argues that the ALJ failed to articulate a supportable rationale that her hearing

17

testimony was not entirely consistent with the medical evidence. (*Id.* at PageID#694-95). Thus, she contends that this matter should be remanded.

To the extent that Ms. De Jesus Medina attempts to rely solely on her hearing testimony to support her argument, this is unavailing. (*See generally* ECF Doc. 10, PageID#692). An ALJ must consider a claimant's description of her limitations, but the ALJ cannot rely solely on those complaints in formulating the residual functional capacity. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."); 20 C.F.R. §§ 404.1529(a); 416.929(a) (requiring "medical signs and laboratory findings" in support of a claimant's assertions in order to warrant a finding that she is disabled). Rather, an ALJ must analyze regulatory factors, including a claimant's own descriptions, objective medical evidence, daily activities, medications used, and any measures the claimant uses to relieve his complaints. *See* 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4) (The agency will "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence.").

Ms. De Jesus Medina's argument that the ALJ provided a "boilerplate" rationale for discounting her alleged symptoms also overlooks the entire analysis that the ALJ conducted regarding her pain symptoms. (*See* ECF Doc. 10, PageID#694). Reading the ALJ's decision as a whole and with common sense, the ALJ presented substantial evidence in assessing Ms. De Jesus Medina's symptoms and allegations of disabling pain and then discounting them. *Buckhannon v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (Courts read the ALJ's decision "as a whole and with common sense."); *Bryant v. Comm'r of Soc. Sec.*, No. 3:19-cv-0079, 2019 WL 5684456, at *10 (N.D. Ohio Nov. 1, 2019). Here, the ALJ found Ms. De Jesus Medina's lumbar spine disorder

to be a severe impairment and considered the entire record in crafting the RFC. (Tr. 24-28). Rather than ignoring Ms. De Jesus Medina's impairments, the ALJ discussed them.

For example, the ALJ noted that Ms. De Jesus Medina complained of pain in her elbows, wrists, and spine due to arthritis. (Tr. 26). In December 2017, Ms. De Jesus Medina was noted to have complained of abdominal pain, but she denied having any back or neck pain. (Tr. 26, 353). The ALJ also noted that progress notes from April 2018 noted tenderness and spasms in the spine, but also proper orientation, normal motor function, and no sensory deficits. (Tr. 26, 345). The ALJ even acknowledged Ms. De Jesus Medina's July 3, 2019 visit—evidence that Ms. De Jesus Medina now cites in support of her position (ECF Doc. 10, PageID#691)—where she complained of back pain and difficulty ambulating and was found to have some tenderness in the lower lumbar spine and muscle spasms, but no indication of decreased range of motion or decreased strength. (Tr. 26, 330). The ALJ also discussed a July 2019 MRI of Ms. De Jesus Medina's lumbar spine, which Ms. De Jesus Medina also cites, that only found mild lumbar spondylosis without central canal or neural foramen stenosis. (Tr. 26, 628). Significantly, her progress note stated that the MRI "results do not match what she is reporting or the degree of pain she [is] experiencing." (Tr. 537). In November 2019, Ms. De Jesus Medina ambulated with no assistive devices and had full strength neurologically, but had a positive straight leg raise and positive joint tenderness in the spine. (Tr. 26, 509).

Ms. De Jesus Medina notably fails to address the ALJ's conclusion that the record does not contain any supported function-by-function opinions from treating or examining physicians indicating that she is disabled or even has limitations greater than those determined in the ALJ's decision. (Tr. 28). Indeed, she fails to point to any function-by-function opinions from physicians

19

in support of a finding that she is disabled or that she has greater limitations than those proposed by the ALJ. (*See generally* ECF Doc. 10, PageID#690-92).

The state agency physicians reviewed the entire record and provided their opinion on Ms. De Jesus Medina's work-related limitations. (Tr. 27-28, 53-63, 99-105). Specifically, Dr. Chang opined that Ms. De Jesus Medina is able to occasionally lift and carry up to 50 pounds, frequently lift and carry up to 25 pounds, stand and walk for six hours per day, sit about six hours per day, frequently stoop, and has no limitations in other postural activities. (Tr. 62-63). The ALJ discounted Dr. Chang's opinion because the ALJ determined the record after the issuance of Dr. Chang's opinion indicated positive clinical findings impacting her lumbar spine (*i.e.*, tenderness and muscle spasms) that would likely prevent Ms. De Jesus Medina from lifting and carrying 50 pounds, and standing and walking for six hours per day. (Tr. 27). The ALJ, however, determined that Dr. Siddiqui's findings were persuasive. (Tr. 27-28). Dr. Siddiqui opined that Ms. De Jesus Medina is able to occasionally lift and carry up to 20 pounds, frequently lift and carry up to 10 pounds, stand and walk about six hours per day, sit about six hours per day, and should avoid all exposure to hazards such as machinery and heights. (Tr. 104-05). The ALJ adopted Dr. Siddiqui's findings and limited Ms. De Jesus Medina to light work with additional postural limitations. He included additional limitations that Ms. De Jesus Medina could never climb ladders, ropes, or scaffolds; could only frequently stoop and crawl; and should avoid all exposure to unprotected heights and heavy machinery. (Tr. 25). These findings provide substantial evidence in support of the ALJ's RFC determination.

Ms. De Jesus Medina's contention that the ALJ improperly considered her reported daily activities in crafting her RFC is also unavailing. Citing *Lorman v. Comm'r of Soc. Sec.*, 107 F. Supp. 3d 828, 838 (S.D. Ohio 2015), Ms. De Jesus Medina contends that the ALJ found Ms. De

Jesus Medina to be not disabled based on her ability to perform some activities. (ECF Doc. 10, PageID#693). Accordingly, she argues that this matter should be remanded for consideration of the totality of the evidence regarding her limitations and whether the combination of her symptoms would preclude her from being able to engage in substantial gainful activity at the light level of exertion on a sustained basis. (*See id.* at PageID#693-94). Yet, this assertion distorts the conclusion that the ALJ reached. The ALJ did not determine that Ms. De Jesus Medina's ability to complete daily activities meant that she could perform substantial gainful activity. Rather, the ALJ determined that these daily activities led to a conclusion that Ms. De Jesus Medina is not so limited as she alleged, but instead is able to perform work in line with the assigned RFC. (*See* Tr. 28-29).

Furthermore, contrary to Ms. De Jesus Medina's contention, it was not improper for an ALJ to consider daily activities in evaluating a claimant's assertions regarding pain. It is one of the factors that an ALJ may consider when evaluating subjective symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; *Blacha v. Sec'y of Health & Human Servs.*, 927 F. 2d 228, 231 (6th Cir. 1990). Here, the ALJ noted that Ms. De Jesus Medina indicated in her function report that she is able to perform personal care, prepare meals, perform household chores and yardwork, shop in stores, and manage money. (Tr. 273). She reported to Dr. Rivera, a consultative psychologist, that she is able to cook, go grocery shopping, drive, and perform personal hygiene. (Tr. 499). These activities support the ALJ's conclusion that she is "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 28).

Finally, the presence of some evidence that supports a claimant's position is not alone a sufficient reason to remand. So long as the ALJ's decision is supported by substantial evidence, "we must defer to that decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 667 (6th

Cir. 2009) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). As demonstrated above, the ALJ provided ample substantial evidence in the record to support his decision. Moreover, the ALJ provided an adequate explanation of his reasoning for discounting Ms. De Jesus Medina's alleged pain symptoms. Accordingly, I recommend that the Court reject Ms. De Jesus Medina's second assignment of error.

## VI.  RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court OVERRULE Ms. De Jesus Medina's assignments of error and AFFIRM the ALJ's decision.

Dated: April 17, 2023

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge

## VII.  NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).